UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Tracy Bott, individually and on
behalf of all others similarly situated,

       Plaintiff,

v.

Hatch Baby, Inc.,

       Defendant.

_____

**CASE NO.:**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

     Plaintiff Tracy Bott, ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Class Action Complaint against Defendant Hatch Baby, Inc. ("Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel and review of public documents.

## <u>NATURE OF THE ACTION</u>

     1.     This action seeks to remedy the unjust business practices of Defendant with respect to the marketing and sales of its Hatch Baby Rest 1st Generation Sound Machine [1] ("Recalled Sound Machine", "Class Sound Machine", or "Sound Machine"):

---

[1] https://www.cpsc.gov/Recalls/2024/Hatch-Baby-Recalls-Power-Adapters-Sold-with-Rest-1st-Generation-Sound-Machines-Due-to-Shock-Hazard

1



2.      Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that usage of the Product may increase the risk of electric shock.

3.     Plaintiff brings this action to remedy various violations of law in connection with Defendant's manufacturing, marketing, advertising, selling and warranting of the Recalled Sound Machine.

4.     As described in further detail below, this Recalled Sound Machine has a dangerously defective power adapter. The power adapter, as the name implies, is what powers the Sound Machine to operate through the consumer's power outlet allowing for electricity to flow from the power outlet to power the Sound Machine. Defendant's Sound Machine power adapter has an inherit flaw that can result in the unintended removal of the plastic housing surround the alternating current (AC) adapter, electricity comes out of outlets in the form of alternating current (AC), consequently exposing the power prongs and producing a risk of electrical shock to the consumer.[2]

5.     On July 3, 2024, Defendant recalled nearly 919,400 of the above-referenced Hatch Baby Rest 1st Generation Sound Machine.[3]

6.     The allegations herein are based on personal knowledge as to Plaintiff's own experience, and are made as to other matters based on an investigation by counsel, including counsel's analysis of publicly available information.

## FACTUAL ALLEGATIONS

7.     In Spring of 2022, Plaintiff purchased her Hatch Baby 1st Generation Sound Machine ("Plaintiff's Product") on the BuyBuyBaby website.

8.     Plaintiff's Sound Machine model number is included within Defendant's Recall. A visual representation of Plaintiff's Sound Machine is included below:

---

[2] https://www.cpsc.gov/Recalls/2024/Hatch-Baby-Recalls-Power-Adapters-Sold-with-Rest-1st-Generation-Sound-Machines-Due-to-Shock-Hazard
[3] Id.



9.     Defendant markets and claims the Product is an audio and lighting devise with emphasis on caregivers of "Babies & Kids" and includes features such as a sound machine (audio player), night light, time to rise (alarm), audio monitor (listen and talk), among other features. Moreover, Defendant claims and emphasizes the Product as one that emphasizes safety in the hypersensitive environment with "Babies & Kids" along with touting that it's Product is designed by experts implying reassurance to consumers. Visual representations of Defendant's claims are included below:





10.     Based on Defendant's active and persistent promotions touting the quality of its Sound Machine and claims of providing a "Healthy" Product, Plaintiff's admiration of the Hatch resulted in the consideration of Hatch as a quality company with a strong reputation for producing reliable and safe Sound Machines.[4]

11.     In addition to relying on Defendant's general reputation, which Defendant gained through marketing and promotion of products intended to be safe for users with emphasis on care for "Babies & Kids", Plaintiff chose the specific model because she believed it was a high-quality safe sound machine.

12.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiff and Class Members' transactions.

13.     Plaintiff at the time of purchase was not informed by Defendant, and similarly situated consumers, in any manner of the Product's risk of electrical shock through the Product's marketing, packaging, labels, contents, advertising or in any other manner.

---

[4] https://www.hatch.co/

14.     Plaintiff has been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased a Product that was mislabeled, dangerous, and entirely worthless. Accordingly, Plaintiff received less than what they bargained and paid for.

15.     Plaintiff has never been informed of any recalls or defects related to her Sound machine by anyone affiliated with Hatch; instead, she learned of the defects from the U.S. Consumer Product Safety Division recall citied in online news articles and on social media.

16.     Plaintiff's Product suffered from the Defect, which prompted Defendant's recall.

17.     Plaintiff was completely unaware that the Product power adapter could be compromised through no fault of her own while using the power adapter as intended.  Plaintiff appropriately assumed that the power adapter would remain safe and free of any defects, particularly in light of its marketed and advertised use for "Babies & Kids."

18.     Plaintiff was unaware that she had been deceived into purchasing an unsafe Product.  Plaintiff reasonably assumed that her Product was perfectly and would be safe to use.

19.     Plaintiff only became aware that she had been deceived into purchasing an unsafe Product by Defendant's false advertising and deceptive practices after the publishing of Consumer Product Safety Division's article on the recall.

20.     The recall was made public by the U.S. Consumer Product Safety Commission, www.cpsc.gov, dated July 3, 2024.

21.     Since 2019, Defendant has designed, manufactured, distributed, and sold the Recalled Sound Machine. Defendant has sold, directly or indirectly, through dealers and other

retail outlets, about 919,400 Recalled Baby Hatch 1st Generation Rest Sound Machines nationwide.[5]

22.    As mentioned earlier and discussed in more detail below, the Recalled Sound Machine have an inherit Defect that causes a serious safety concern. That is, the power adapter has an inherit flaw that can result in the unintended removal of the plastic housing surround the alternating current (AC) adapter consequently exposing the power prongs and producing a risk of electrical shock to the consumer.

23.    Defendant is well aware that any consumer who experienced an issue with the defect would be predisposed to throwing the Product away.

24.    Accordingly, Defendant's recall is designed to reach very few people and designed to benefit very few of the consumers who purchased the Product.

25.    The class action remedy is superior to Defendant's failed recall in every conceivable fashion.

**JURISDICTION AND VENUE**

26.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York, and Defendant Hatch Baby, Inc. is a citizen of Delaware; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

27.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

---

[5]https://www.cpsc.gov/Recalls/2024/Hatch-Baby-Recalls-Power-Adapters-Sold-with-Rest-1st-Generation-Sound-Machines-Due-to-Shock-Hazard.

28.     Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the state of New York. A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

29.     Plaintiff Tracy Bott is a citizen of the State of New York and resides in Nassau County, New York, where she intends to remain.

30.     Defendant Hatch Baby, Inc. is a Delaware corporation with its principal place of business in Palo Alto, California. Hatch Baby, Inc.'s principal place of business is 3790 El Camino Real, Unit 627 Palo Alto, CA 94306.

31.     Defendant designs, manufactures, markets, distributes, services, repairs, sells, and leases Sound Machines, including the Recalled Sound Machine, nationwide. Defendant is the warrantor and distributor of the Recalled Sound Machines in the United States.

32.     Through various entities, Defendant markets, distributes, warrants, and sells sound machines, including the Recalled Sound Machines, in multiple locations across the United States, including New York.

## CLASS ALLEGATIONS

33.     Plaintiff brings this matter on behalf of herself and those similarly situated. As detailed at length in this Complaint, Defendant sold sound machines that were unsafe for their intended use. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

34.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

35.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

36.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

37.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

38.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's Products.

39.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

       a.  Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products; and

       b.  Whether Plaintiff and the Class are entitled to money damages under the same cause of action as the other Class Members?

40.     <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

41.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class and she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

42.    <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's unsafe Products.

43.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a.    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

    c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's unsafe Products.

44.    Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**CLAIMS**
**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and New York Subclass Members)**

45.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

46.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

47. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

48. There is no adequate remedy at law.

49. Defendant misleadingly, inaccurately, and deceptively advertise and market their Products to consumers.

50. Defendant's improper consumer-oriented conduct—including failing to disclose that the Products have *Salmonella* and *Listeria monocytogenes* —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendant's Products and to use the Products when they otherwise would not have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

51. Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

52. Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

53. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

54. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory,

treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 350
**(On Behalf of Plaintiff and the New York Subclass Members)**

55.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

56.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

57.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.   In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

58. Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products inasmuch as it misrepresents that the Products are safe for use and doesn't list that the Products contain *Salmonella* and *Listeria monocytogenes*.

59. Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

60. Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

61. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

62. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

63. Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

64. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

65. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

66.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

67.     Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are safe for use and do not contain *Salmonella* and *Listeria monocytogenes*.

68.     Defendant omitted that the Products contain a known bacterium from its ingredients labeling. This omission would lead reasonable consumers did not contain known bacterium, when in fact, the Products were contaminated with *Salmonella* and *Listeria monocytogenes* as stated herein.

69.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

70.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiff and Class Members' transactions.

71.     Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

72.     Defendant knowingly breached the express warranties by including *Salmonella* and *Listeria monocytogenes* in the Products sold to Plaintiff and the Class without properly notifying them of their inclusion in the Products.

73.     Within a reasonable time after it knew or should have known, Defendant did not change the Products' labels to include *Salmonella* and *Listeria monocytogenes* in the ingredients

list or to otherwise warn consumers that the Products contain, or are at risk of containing, *Salmonella*.

74.    Defendant thereby breached the following state warranty laws:

a.    Code of Ala. § 7-2-313;

b.    Alaska Stat. § 45.02.313;

c.    A.R.S. § 47-2313;

d.    A.C.A. § 4-2-313;

e.    Cal. Comm. Code § 2313;

f.    Colo. Rev. Stat. § 4-2-313;

g.    Conn. Gen. Stat. § 42a-2-313;

h.    6 Del. C. § 2-313;

i.    D.C. Code § 28:2-313;

j.    Fla. Stat. § 672.313;

k.    O.C.G.A. § 11-2-313;

l.    H.R.S. § 490:2-313;

m.    Idaho Code § 28-2-313;

n.    810 I.L.C.S. 5/2-313;

o.    Ind. Code § 26-1-2-313;

p.    Iowa Code § 554.2313;

q.    K.S.A. § 84-2-313;

r.    K.R.S. § 355.2-313;

s.    11 M.R.S. § 2-313;

t.    Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.     R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

rr.     Utah Code Ann. § 70A-2-313;

ss.     9A V.S.A. § 2-313;

tt.     Va. Code Ann. § 59.1-504.2;

uu.     Wash. Rev. Code Ann. § 6A.2-313;

vv.     W. Va. Code § 46-2-313;

ww.     Wis. Stat. § 402.313; and

xx.     Wyo. Stat. § 34.1-2-313.

75.     As a direct and proximate result of Defendant's breach of the express warranties, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) An Order requiring Defendant to establish a blood testing program for the pets of Plaintiff and the Class, as well as to establish a medical monitoring protocol for the pets of Plaintiff and the Class to monitor the pets individual health and diagnose at an early stage any ailments associated with exposure to *Salmonella* and *Listeria monocytogenes*;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and

19

willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

Granting such other and further relief as the Court may deem just and proper

Dated: October 10, 2024                    Respectfully Submitted,

**SULTZER & LIPARI, PLLC**

By: */s/ Philip J. Furia*
Philip J. Furia, Esq.
Jason P. Sultzer, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
furiap@thesultzerlawgroup.com
sultzerj@thesultzerlawgroup.com